IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAMAR MILBOURNE,<br><br>              Petitioner,<br><br>    v.<br><br>BEVERLY HASTINGS, et al.,<br><br>             Respondents. | HONORABLE JEROME B. SIMANDLE<br><br><br>Civil Action<br>No. 13-4821 (JBS)<br><br>**OPINION** |

APPEARANCES:

Lamar Milbourne, Petitioner pro se
483785/700772C
East Jersey State Prison
1100 Woodbridge Avenue
Rahway, New Jersey 07065

Matthew M. Bingham, Esq.
Cumberland County Prosecutor's Office
43 Fayette Street
Bridgeton, NJ 08302
    Attorney for Respondent Beverly Hastings

**SIMANDLE, District Judge:**

## I.    INTRODUCTION

Lamar Milbourne has submitted an amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Amended Petition, Docket Entry 6. Respondent Beverly Hastings opposes the petition. Answer, Docket Entry 13. For the reasons stated herein, the petition shall be denied and no certificate of appealability shall issue.

## II. BACKGROUND

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, 28 U.S.C. § 2254(e)(1), reproduces the recitation of the facts as set forth by the New Jersey Superior Court Appellate Division in its opinion denying Petitioner's post-conviction relief ("PCR") appeal:

> Defendant and his three co-defendants, Milledge, Nichols and Hinson, embarked on the night of September 19, 2002, to "rob some Mexicans." At approximately 9:15 p.m., they encountered two teenagers, C.P. and K.M., parked near a boat ramp at Elmer Lake in Bridgeton. Claiming to be police officers, defendant and the other young men pulled the teenagers from the car. Defendant brought K.M. to the rear of the vehicle where he "pressed [her] up against [the] side of the car," patted her down, and ordered her to spread her legs. When K.M. resisted, defendant punched her repeatedly in her ribs. Defendant took K.M.'s keys and wallet, which contained eighty-five dollars. Next, defendant lifted K.M.'s shirt, removed her bra, unbuttoned her pants, and inserted his finger into her vagina. One of the other men then approached her, pulled her shirt over her head so that she could not see, after which she felt fingers inserted into her vagina at least ten times. Defendant removed K.M.'s shirt and placed his fingers inside her rectum. When she screamed for help, defendant slammed her head into the trunk. She cried, "God, help me," and heard one of the men say, "God couldn't help [you]." The others yelled, "Shut up," and, "We'll kill you."
>
> Next, all four defendants began participating in the sexual assault, punching and threatening to kill K.M. if she did not comply with their demands. They dragged her into a wooded area and continued the sexual assault over a half-hour period. They repeatedly punched C.P., while forcing him to watch the assault on K .M. C.P. was struck with a baseball bat, kicked and stomped. The men shouted words of encouragement to one another during these vicious attacks.

Once the defendants left, the victims managed to drive themselves to a hospital where they were treated for serious injuries. The savage attack was reported to the police. Suspects were quickly developed because C.P. recognized some of the young men from school.

When co-defendant Hinson was arrested later that night, he inculpated defendant. Shortly thereafter, police arrested defendant at his home. In the police vehicle, on the way to headquarters, defendant received his *Miranda*[1] rights. He also signed a *Miranda* rights card at the police station before questioning. Defendant was initially reluctant to discuss the incident. However, after being informed that Hinson implicated him, defendant admitted to police that he and the other men "were looking to screw up a prom in the projects and then they decided to go out and rob a Mexican." He then disclosed that when the men first arrived at the park, they unsuccessfully attempted to rob another individual. He explained that after driving slightly further, they came upon C.P. and K.M.

At that point, defendant agreed to provide a taped statement and was advised of his *Miranda* rights again. In his statement defendant gave his version of the incident.[2] Defendant maintained that he did not have intercourse with K.M.

*State v. Milbourne*, No. A-3313-10, 2012 WL 6195813, at *1-2

(N.J. Super. Ct. App. Div. Dec. 13, 2012) (alterations in

original); Ra18.[3]

Prior to trial Petitioner moved to exclude his statements

to police and K.M.'s and C.P.'s identification of him. *See*

---

[1]  *Miranda v. Arizona*, 384 U.S. 436 (1966).
[2]  "Defendant's taped statement was substantially consistent with the facts described by the merits appeal panel in its appeal." *State v. Milbourne*, No. A-3313-10, 2012 WL 6195813, at *2 n.2 (N.J. Super. Ct. App. Div. Dec. 13, 2012).
[3] Ra refers to the exhibits to Respondent's Answer, Docket Entry 18.

*generally* 2T.[4] Detectives Patitucci and Zanni testified on behalf
of the State during the *Miranda* hearing; Petitioner did not
present any witnesses. The trial court found Petitioner
knowingly and voluntarily waived his rights after receiving
proper *Miranda* warnings and deemed the taped statement to be
admissible. 2T80:20-22. During the *Wade*[5] hearing, Petitioner
argued the photographic show-up procedure was impermissibly
suggestive because police officers showed K.M. and C.P.
photographs of Petitioner and his co-defendants and asked them
to state who did what during the crime. 2T81:11-19. No other
photographs were shown to the victims. After hearing testimony
from K.M., the trial court indicated it had "misgivings about

---

[4] 1T – Transcript of Motion Hearing, dated September 11, 2003.
  2T – Transcript of trial and motion hearings, dated January 5, 2004.
  3T – Transcript of trial, dated January 6, 2004.
  4T – Transcript of State's opening statement, dated January 6, 2004.
  5T – Transcript of K.M.'s testimony, dated January 6, 2004.
  6T – Transcript of trial, dated January 7, 2004.
  7T – Transcript of C.P's testimony, dated January 7, 2004.
  8T – Transcript of trial, dated January 8, 2004.
  9T – Transcript of State's closing argument, dated January 8, 2004.
  10T – Transcript of trial, dated January 9, 2004.
  11T – Transcript of motion for new trial and sentencing, dated April 15, 2004.
  12T - Transcript of limited remand hearing, dated August 24, 2006.
  13T – Transcript of PCR hearing, dated May 14, 2010.
  14T – Transcript of PCR decision, dated July 30, 2010.
  15T – Transcript of grand jury proceedings, dated February 19, 2003.
[5] *United States v. Wade*, 388 U.S. 218 (1967).

the validity of the procedure utilized . . . . It was not utilized to identify the actor as being a participant, but the actor as participating in a certain aspects . . . I'm not clearly convinced that there wasn't some problem with the procedure." 2T111:1-9. It therefore held that K.M. would not be permitted to testify that she identified Petitioner from his photograph. She would be able to identify Petitioner in court, however, as the trial court concluded that her identification was based on her observations from the night in question, not the photographs. 2T110:14 to 111:14. C.P. did not testify during the *Wade* hearing, but the trial court noted the same restrictions would be placed on his trial testimony. 2T114:1-3.

The State indicated that it would oppose the introduction of a DNA sample found on K.M. pursuant to New Jersey's Rape Shield Law, N.J. STAT. ANN. § 2C:14-7 (limiting circumstances under which evidence of victim's previous sexual conduct may be admitted). "Defense counsel responded, 'We have no objection to that, Judge.' There was no further discussion on the issue." *State v. Milbourne*, No. A-3068-04, 2007 WL 4355495, at *5 (N.J. Super. Ct. App. Div. Dec. 14, 2007). The parties agreed to introduce the following stipulation to the jury:

> "Specimens from the sexual assault evidence collection kit . . . of [K.M.] and specimens from Lamar Milbourne were sent to the New Jersey State Police Lab for analysis. No DNA of Lamar Milbourne was detected in the

specimens from the sexual assault evidence collection kit of [K.M.]."

3T93:1-7. The parties also stipulated that none of the fingerprints or palm prints recovered from the scene containing sufficient characteristics for testing belonged to Petitioner. 3T93:8-14.

Petitioner was tried separately from his three co-defendants. The State presented seven witnesses, including K.M. and C.P. Both victims identified Petitioner in court as one of the people who had attacked them and sexually assaulted K.M. Petitioner presented two character witnesses and testified on his own behalf. He testified that he had no involvement in the events at the park. He stated the other defendants came to his house late that night and told him they had "'wowed out on this couple,'" which Petitioner understood to mean they beat the couple up. 8T36:3, 25. Petitioner told them to leave his house, and the police arrived a few hours later. 8T37:20-25. He further claimed that he only gave the statement to the police after they called him derogatory racial names and told him they had already beaten up Michael Hinson, who named Petitioner as being involved. 8T32:1-16, 34:2 to 35:3. Petitioner stated the police provided him with the details of the crime so that he would be able to give a statement implicating his co-defendants in exchange for being released. 8T44:14 to 14. He further indicated

he admitted to being present because Detective Zanni told him "'[b]eing there is not a crime,'" and to lend authenticity to his statement against his co-defendants. 8T47:15 to 48:18.

The jury found Petitioner guilty of first-degree aggravated sexual assault of K.M., N.J. Stat. Ann. § 2C:14-2(a); first-degree kidnapping, N.J. Stat. Ann. § 2C:13-1(b); third-degree aggravated assault, N.J. Stat. Ann. § 2C:12-16; third-degree criminal restraint, N.J. Stat. Ann. § 2C:13-2(a); possession of a baseball bat for an unlawful purpose, N.J. Stat. Ann. § 2C:39-4(d); second-degree robbery N.J. Stat. Ann. § 2C:15-1(a); second-degree conspiracy to commit robbery, N.J. Stat. Ann. § 2C:15-1(a)(1); and disorderly persons simple assault, N.J. Stat. Ann. § 2C:12-1(a). He was acquitted of second-degree aggravated assault of K.M. and C.P., N.J. Stat. Ann. § 2C:12-1(b)(1), and third-degree terroristic threats against both K.M. and C.P., N.J. Stat. Ann. § 2C:12-3(b).

Petitioner filed an appeal with the Appellate Division challenging the exclusion of the DNA results, the sufficiency of the evidence on the charge of kidnapping K.M., the kidnapping jury instructions, admission of other bad acts evidence, lack of a *Wade* hearing for C.P., the excessive sentence and fees, and the admission of his statement. *See* Pet. App. Brief, Ra15. After a limited remand to the trial court for consideration of a claim not raised in Petitioner's opening brief regarding the

warrantless arrest, the Appellate Division affirmed the
convictions but remanded to the trial court for resentencing.
*State v. Milbourne*, No. A-3068-04, 2007 WL 4355495 (N.J. Super.
Ct. App. Div. Dec. 14, 2007). The trial court resentenced
Petitioner to forty years with 85% parole ineligibility. The New
Jersey Supreme Court denied certification. *State v. Milbourne*,
945 A.2d 1287 (N.J. 2008).

Petitioner thereafter filed a PCR petition raising several
challenges to his trial and appellate counsels' performances. He
particularly challenged trial counsel's decision to enter into
the stipulation regarding the DNA evidence as well as counsel's
performance during the *Miranda* hearing. *See* Pet. PCR Brief,
Ra39. The PCR court heard oral argument on May 14, 2010, 13T,
and denied the petition without an evidentiary hearing on July
30, 2010, 14T. The Appellate Division affirmed the decision of
the PCR court. *State v. Milbourne*, No. A-3313-10, 2012 WL
6195813, at *2 (N.J. Super. Ct. App. Div. Dec. 13, 2012),
*certif. denied*, 67 A.3d 1192 (N.J. 2013).

Petitioner filed a § 2254 petition on August 7, 2013.
Petition, Docket Entry 1. By Order dated August 15, 2013, this
Court informed Petitioner of his rights under *Mason v. Meyers*,
208 F.3d 414 (3d Cir. 2000), and ordered him to advise the Court
as to how he wished to proceed. *Mason* Order, Docket Entry 2.
Petitioner elected to submit an amended petition on September

16, 2013. Respondent filed its answer on November 27, 2013, and Petitioner submitted a traverse on February 24, 2014. On July 11, 2016, Petitioner submitted a supplement to his traverse raising an actual innocence claim. July 11, 2016 Letter, Docket Entry 17.

## III. STANDARD OF REVIEW

Title 28 U.S.C. § 2254 permits a federal court to entertain a petition for writ of habeas custody on behalf of a person in state custody, pursuant to the judgment of a state court, "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

With respect to any claim adjudicated on the merits by a state court, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are

materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). "[A] state-court decision is an unreasonable application of clearly established [Supreme Court] precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 134 S. Ct. 1697, 1706, *reh'g denied*, 134 S. Ct. 2835 (2014). The Court must presume that the state court's factual findings are correct unless Petitioner has rebutted the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**IV. ANALYSIS**

Petitioner raises the following points for this Court's review:

I.    The exclusion of exculpatory evidence that an unknown person's DNA was present in the material collected from the female victim denied Petitioner of his constitutional right to present a defense.

II.   The crime of kidnapping of the female victim was unsupported by sufficient evidence because the confinement was incidental to the other crimes[.] Additionally, the jury instructions for both kidnappings were deficient denying Petitioner's constitutional right to a fair trial and to due process.

III. Repeated references to highly inflammatory evidence that the Petitioner had planned to "beat up and rob some Mexicans" and had attempted to rob someone just before the incident, denied the Petitioner his

constitutional right to due process of law and of a fair trial.

IV. The impermissibly suggestive show-up of Petitioner's photograph to C.P. tainted his in-court identification depriving Petitioner of his constitutional rights to due process and to a fair trial.

V. Petitioner has been denied effective assistance of trial and appellate counsel pursuant to the U.S. Constitution, Amendment VI and XIV.

VI. Trial Counsel was ineffective in preparing and arguing Petitioner's motion to suppress his statement before the trial court pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966) (U.S. Cont. Amend. XIV).

VII. Trial Counsel was ineffective in failing to object and even eliciting prejudicial inadmissible hearsay evidence in violation of Petitioner's Sixth Amendment right.

VIII. Trial counsel was ineffective by stipulating to withhold from the jury that an unknown person's DNA was present in the evidence collected from the female victim denying Petitioner of his constitutional right to a fair trial including the right to effectively pursue a defense involving "third party guilt."

IX. The Defendant failed to receive adequate legal representation from trial counsel arising out of the *Miranda* hearing.

X. The Petitioner failed to receive adequate legal representation from trial counsel as a result of counsel entering into a stipulation regarding DNA evidence rather than introducing the DNA test results to affirmatively support a third party guilt defense.

**A. Challenges to Kidnapping Conviction**

In Ground II, Petitioner adopts his appellate counsel's arguments in challenging the first-degree kidnapping convictions. First, Petitioner argues the evidence at trial was insufficient to convict him of kidnapping K.M. because "the 'confinement' of K.M. was inherent in the other crimes committed against her." Pet. App. Brief at 20.

He further asserts the jury instructions on kidnapping were deficient for three reasons. He argues the trial court instructed the jurors that "'in determining whether the confinement was substantial,' they *may* consider'" the factors enumerated in *La France*.[6] Pet. App. Brief at 21 (quoting 8T112:21 to 113:3) (emphasis in original). "First, there is nothing discretionary or optional about *La France*. The jury *must* consider those factors. . . . Without *requiring* the jury to consider the *La France* factors, the judge gave the jury the option to ignore them, a critical error on a charge as serious as kidnapping." *Id.* (emphasis in original). He also argues

---

[6] "A court may wish to use the *Berry* factors, suggesting to the jury that it consider: (1) the duration of the detention; (2) whether the detention occurred during the commission of a separate offense; (3) whether the detention was inherent in the separate offense; and (4) whether the detention created a significant danger to the victim or another independent of that posed by the separate offense." *State v. La France*, 569 A.2d 1308, 1313 (N.J. 1990) (citing *Gov't of Virgin Islands v. Berry*, 604 F.2d 221, 227 (3d Cir. 1979)).

"nothing in the instructions informs the jurors that failure of the State's proofs on *any* of the *La France* factors should result in an acquittal." *Id.* at 21-22 (emphasis in original). Finally, he argues the trial court failed "to charge accomplice liability on the kidnapping charge respecting C.P. because the evidence concerning defendant's actions in confining C.P. was insufficient . . . ." *State v. Milbourne*, No. A-3068-04, 2007 WL 4355495, at *10 (N.J. Super. Ct. App. Div. Dec. 14, 2007).

> 1.   *Whether there was sufficient evidence to convict Petitioner of kidnapping K.M.*

"[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)).

New Jersey "defines kidnapping, in relevant part, as unlawfully confining another for a substantial period, to either (1) 'facilitate commission of any crime or flight thereafter;'

or (2) 'inflict bodily injury on or to terrorize the victim or another.' To support a conviction for kidnapping, the confinement must be 'criminally significant in the sense of being more than merely incidental to the underlying crime.'" *Milbourne*, 2007 WL 4355495, at *9 (quoting *State v. La France*, 569 A.2d 1308, 1313 (N.J. 1990)). "[O]ne is confined for a substantial period if that confinement 'is criminally significant in the sense of being more than merely incidental to the underlying crime,' and that determination is made with reference not only to the duration of the confinement, but also to the 'enhanced risk of harm resulting from the [confinement] and isolation of the victim [or others]. That enhanced risk must not be trivial.'" *La France*, 569 A.2d at 1313 (quoting *State v. Masino*, 466 A.2d 955, 961 (1983)) (first alteration added).

Here, K.M. testified Petitioner took her cellphone, 5T9:14-19; dragged her from her car, 5T9:3-12; held her against the trunk, 5T10:2-7, hit K.M. in her side, 5T11:3-9; stole her car keys and wallet, 5T11:18-25; removed her clothing, 5T12:5-19; and proceeded to digitally penetrate her vagina and anus, 5T13:1-3, 13:20 to 14:1. A reasonable jury could conclude that dragging K.M. out of her car "constitute[d] a separate danger that substantially increase[d] the risk of harm . . . ." *State v. Brent*, 644 A.2d 583, 592 (N.J. 1994)(finding elements of first-degree kidnapping present where defendant attacked victim,

dragged her into wooded lot, and sexually assaulted her). A jury could also reasonably conclude that Petitioner unlawfully confined K.M. "for a substantial period in a place of isolation with the intention, at a minimum, to inflict bodily injury on" C.P. *See Milbourne* 2007 WL 4355495, at *10 (citing cases).

Moreover, the Appellate Division concluded that "[m]ost importantly, the taking of K.M.'s car keys, cell phone, and wallet, without knowledge that she had a spare key in the glove compartment, was conduct that created an enhanced risk of harm for both victims, who were left ostensibly without either a means of transportation or a way to contact someone for help after the perpetrators left." *Id.* (internal citations and quotation marks omitted). That in and of itself would support a guilty verdict for first-degree kidnapping. *See State v. Bryant,* 524 A.2d 1291, 1296 (N.J. Super. Ct. App. Div.) (holding that binding and gagging of robbery victims to facilitate defendant's flight from premises constituted more than confinement incidental to underlying robbery and supported kidnapping conviction), *certif. denied*, 528 A.2d 24, *cert. denied*, 484 U.S. 978 (1987*), superseded on other grounds*, *State v. Drury*, 919 A.2d 813 (2007). In short, the jury had several bases on which to find Petitioner guilty of first-degree kidnapping.

Viewing the evidence presented at trial in the light most favorable to the prosecution, this Court cannot conclude that

"no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *accord McDaniel v. Brown*, 558 U.S. 120, 132–33 (2010). The Appellate Division's decision is reasonable based on the facts adduced at trial, and is not contrary to, nor an unreasonable application of, established federal law. 28 U.S.C. § 2254(d). Petitioner is therefore not entitled to relief on this basis.

> 2. *Whether the trial court erred by implying the* La France *factors were optional and by failing to instruct the jury that it had to resolve all the* La France *factors in the State's favor*.

Federal "habeas precedent places an especially heavy burden on a defendant who . . . seeks to show constitutional error from a jury instruction that quotes a state statute." *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009) (internal citation and quotation marks omitted). To show that the jury instruction violated due process, Petitioner must show "both that the instruction was ambiguous and that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Id.* at 190-91 (internal citation and quotation marks omitted). The instruction "must be considered in the context of the instructions as a whole and the

trial record." *Id.* at 191 (internal citation and quotation marks omitted).

Moreover, "it is not enough that there is some slight *possibility* that the jury misapplied the instruction, the pertinent question is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* (internal citation and quotation marks omitted) (emphasis in original). "In other words, the inquiry requires careful consideration of each trial's unique facts, the narratives presented by the parties, the arguments counsel delivered to the jurors before they retired to deliberate, and the charge as a whole." *Williams v. Beard*, 637 F.3d 195, 223 (3d Cir. 2011) (citing *Waddington*).

Petitioner has not carried his burden of proof in showing that the jury instructions violated the Fourteenth Amendment. The trial court charged the jury in relevant part as follows:[7]

> "A person is guilty of kidnapping if he unlawfully confines another for a substantial period of with the following purpose. That is, to inflict bodily injury or to terrorize the victim or another."

---

[7] There were two counts of kidnapping for each victim. The instructions were substantially the same for each count, except one count for each victim was based on the confinement being for the purpose of a commission of a crime or flight thereafter as opposed to being for the purpose of the infliction of bodily harm or terror. *See* N.J. Stat. Ann. § 2C:13-1(b)(1); 8T106:12-17. The challenged portion of the instructions were the same for all kidnapping counts. The Court references both victims as Petitioner argues the deficient instruction invalidates all of the kidnapping convictions.

In order for you to find the defendant guilty of kidnapping, the State is required to prove each of the following two elements.

First, that the defendant, Lamar Milbourne, unlawfully confined [the victims] for a substantial period of time – for a substantial period. That the confinement was with the purpose to inflict bodily injury on or to terrorize the victim or another. In relation to the first element you will note that again I've used the term "unlawfully confined." A confinement is unlawful if it is accomplished by force, threat or deception. Unlawful confinement must be for a substantial period. However, for this purpose a substantial period is not measured in seconds, minutes or hours, nor by any other standard based strictly upon the passage of time.

Rather, a substantial period is one that is significant, in that it is more than incidental to the underlying crime, robbery, and substantially increases the risk of harm to the victim. That increased risk of harm must not be trivial. If the victim is confined for only a slight period of time and such confinement does not create the isolation and increased risk of harm that are at the heart of the kidnapping statute, then you should not convict the defendant of the kidnapping charge.

Therefore, in determining whether the confinement was substantial, you may consider the duration of the confinement, whether the confinement occurred during the commission of a separate offense, whether the confinement which occurred is inherent in the separate offense, and whether the confinement created a significant danger to the victim independent of that posed by the separate offense.

The second element that the State is required to prove is that the confinement was with a purpose to inflict bodily injury on or to terrorize the victim or another.

. . . .

Therefore, if you find that the State has not proven to you beyond a reasonable doubt each and every element of

> the crime of kidnapping as I've defined that crime to
> you, then you must find the defendant not-guilty.

8T111:15 to 113:7, 114:1-5.

Petitioner has cited no support for his allegation that the *La France* factors are mandatory under the Fourteenth Amendment, or that the instruction was ambiguous or misleading. Even if the instruction was incorrect under New Jersey law, "the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). After considering the jury charge as a whole, this Court cannot conclude there was a reasonable likelihood that the error, if in fact there was one, resulted in the State being relieved of its burden of proof on all elements of the offense.

The charge as a whole sufficiently conveyed to the jury the necessary elements of kidnapping, namely that Petitioner unlawfully confined C.P. and K.M. for a substantial period of time and for a specific purpose, and that the State had to prove those elements beyond a reasonable doubt or the jury had to acquit Petitioner. The *La France* factors are not elements of kidnapping that the State must prove beyond a reasonable doubt; their purpose is to help the jury reach a decision on the confinement element. When the entire charge is considered alongside of the fact that Petitioner's main argument to the jury was that he did not participate in the crimes against C.P.

and K.M. at all, as opposed to not "substantially confining"
them, there is not a reasonable likelihood that using "may"
instead of "must" or failing to tell the jury that it had to
find all four *La France* factors in favor of the State so tainted
the instruction such that the State was relieved of its burden
of proof on the kidnapping charge.

> 3.   *Whether the trial court should have instructed the
> jury on accomplice liability*[8]

Petitioner also argues the trial court should have
instructed the jury on accomplice liability because there was
insufficient evidence to conclude he personally confined C.P. He
asserts the trial court "never informed the jury that when
evaluating the charge of kidnapping of C.P., only *defendant's*
actions, not the actions of the others against C.P., were to be
considered." Pet. App. Brief at 23 (emphasis in original). He
claims that in the absence of the instruction, he "was likely to
be evaluated in light of his co-defendants' actions
(particularly those of Michael Hinson)." *Id.* at 24.

The Appellate Division determined Petitioner was not
entitled to the accomplice instruction under New Jersey law
because he acted as a principal in C.P.'s kidnapping. "[T]he
evidence established that defendant was substantially involved
in the confinement as well. Defendant was the first individual

---

[8] Respondent's answer does not address this point.

to contact C.P., punching him in the eye and dazing him so that the others could more easily assault him. There was substantial evidence in the record that throughout the ordeal defendant took his turn confining C.P. to prevent him from aiding K.M." *State v. Milbourne*, No. A-3068-04, 2007 WL 4355495, at *10 (N.J. Super. Ct. App. Div. Dec. 14, 2007); *see also State v. Maloney*, 77 A.3d 1147, 1156 (N.J. 2013) ("When the State's theory of the case only accuses the defendant of being a principal, and a defendant argues that he was not involved in the crime at all, then the judge is not obligated to instruct on accomplice liability."). "[I]t is not the role of the federal courts to review state court jury instruction rulings that are based on state law[.]" *Maloney v. Nogan*, No. 14-1548, 2017 WL 1404322, at *5 (D.N.J. Apr. 19, 2017) (citing *Barkley v. Ortiz*, 209 F. App'x 120, 124 (3d Cir. 2006) (rejecting claim based on the failure to charge accomplice liability under state law)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to re-examine state court determinations on state-law questions.").

To the extent Petitioner argues the evidence was insufficient to convict him of being a principal in C.P.'s kidnapping, the Appellate Division's ruling is a reasonable application of federal law. C.P. testified Petitioner struck him as he attempted to exit the vehicle. 7T9:13-22. Petitioner also

took turns with his co-defendants keeping C.P. in the car by hitting C.P. in the side, 7T23:16-25, and took K.M.'s car keys, cellphone, and wallet. 5T11:18-25. "[T]he taking of K.M.'s car keys, cell phone, and wallet, without knowledge that she had a spare key in the glove compartment, was conduct that created an enhanced risk of harm for both victims, who were left ostensibly without either a means of transportation or a way to contact someone for help after the perpetrators left." *State v. Milbourne*, No. A-3068-04, 2007 WL 4355495, at *10 (N.J. Super. Ct. App. Div. Dec. 14, 2007) (internal citations and quotation marks omitted). The Appellate Division's conclusion is reasonable based on the evidence presented at trial, and is not contrary to or an unreasonable application of federal law. *See Jackson v. Virginia*, 443 U.S. 307, 318 (1979).

The record also does not support Petitioner's assertion that the jury instructions were misleading. Early in the jury instructions, the trial court informed the jury that it had to determine "not only whether the State has proven each and every element of the offense charged beyond a reasonable doubt, but also whether the State has proven beyond a reasonable doubt *that this defendant is the person who committed it*." 8T99:6-10 (emphasis added). The kidnapping charge, as previously set forth, references the need for the jury to consider the state's proofs against Petitioner. "In order for you to find the

defendant guilty of kidnapping, the State is required to prove each of the following elements to you beyond a reasonable doubt. First, *that the defendant, Lamar Milbourne*, unlawfully confined [C.P.] for a substantial period. And that the confinement was with the purpose to facilitate the commission of any crime or flight thereafter." 8T143:14-22 (emphasis added). The entirety of the jury instructions makes it clear that the State had to prove beyond a reasonable doubt that Petitioner's personal actions violated the law. Petitioner has provided nothing, and there is nothing in the record, that would suggest there is a reasonable likelihood that the jury misapplied the instructions in a way that violated Petitioner's Due Process rights. *Waddington v. Sarausad*, 555 U.S. 179, 190-91 (2009). Petitioner is not entitled to habeas relief on this basis.

**C. Admission of Statements Regarding Intent to Rob "Mexicans"**

Petitioner argues in Ground III that the admission of testimony that he and his co-defendants set out on the night in question to "rob some Mexicans" and attempted to rob someone else was "highly inflammatory" and inadmissible under New Jersey Evidence Rule 404(b). Pet. App. Brief at 25-26. This claim was exhausted on direct appeal.

"Admissibility of evidence is a state law issue." *Wilson v. Vaughn*, 533 F.3d 208, 213 (3d Cir. 2008). This Court cannot grant habeas relief for violations of state law. *Estelle v.*

*McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Petitioner must be able to show that admission of the testimony violated his federal constitutional rights. "Admission of 'other crimes' evidence provides a ground for federal habeas relief only if 'the evidence's probative value is so conspicuously outweighed by its inflammatory content, so as to violate a defendant's constitutional right to a fair trial.'" *Bronshtein v. Horn*, 404 F.3d 700, 730 (3d Cir. 2005) (quoting *Lesko v. Owens*, 881 F.2d 44, 52 (3d Cir. 1989)). Petitioner has not cited any federal cases that would support overturning his convictions on this ground.

Petitioner's statements that he and his co-defendants intended to rob somebody and attempted to rob someone prior to encountering C.P. and K.M. show his intent to commit robbery. The statements indicate he left his home for the specific purpose of robbing someone and had to continue on that night because they were unsuccessful at the first attempt. The prejudicial effect of those statements cannot be said to "so conspicuously outweigh" the probative value of the testimony. *Id.* at 730. *See also Estelle*, 502 U.S. at 69-70 (holding admission of prior injury evidence that was probative of intent did not violate fair trial rights).

Even if the statements were admitted in error, such error was harmless. The Supreme Court has held that "[t]o be entitled to habeas relief, a habeas petitioner must establish that the trial error 'had [a] substantial and injurious effect or influence in determining the jury's verdict.'" *Johnson v. Lamas*, 850 F.3d 119, 132 (3d Cir. 2017) (quoting *Brecht v. Abra*hamson, 507 U.S. 619, 637, (1993)) (second alteration in original). In light of all the other evidence presented over three days of trial, the Court cannot say that the brief mentions of Petitioner's statements had a "substantial and injurious effect" on the verdict.

Petitioner's request for habeas relief on this ground is denied.

## D. Pre-Trial Photographic Show-Up

Petitioner argues in Ground IV that C.P.'s in-court identification was tainted due to an impermissibly suggestive photographic show-up procedure. The Appellate Division held that C.P.'s identification during trial "was based on his independent recollection of the events at the scene and not the photographs shown to him at police headquarters following defendant's arrest. In other words, under the totality of the circumstances, C.P.'s identification was reliable." *State v. Milbourne*, No. A-3068-04T4, 2007 WL 4355495, at *8 (N.J. Super. Ct. App. Div.

Dec. 14, 2007) (citing *Neil v. Biggers,* 409 U.S. 188, 199–200 (1972)).

"[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968).[9] "This determination . . . depends on the totality of the factual circumstances present in the case." *United States v. Stevens*, 935 F.2d 1380, 1389 (3d Cir. 1991) (citing *Simmons*, 390 U.S. at 383). The Court conducts a two-pronged inquiry in determining whether the totality of the circumstances surrounding the identification violates the Due Process Clause. *Id.*

The Court must first consider "whether the initial identification procedure was 'unnecessarily' or 'impermissibly' suggestive. This inquiry actually contains two component parts: 'that concerning the suggestiveness of the identification, and

---

[9] The Appellate Division did not specifically reference *Simmons* and applied *Biggers* and *Manson v. Brathwaite*, 432 U.S. 98 (1977). Although *Biggers* and *Manson* concern the admissibility of out-of-court identifications after suggestive identification procedures, not in-court identifications as is relevant here, the Appellate Division's decision is not contrary to *Simmons* because the tests set forth in *Biggers* and *Manson* inform the *Simmons* determination. 28 U.S.C. § 2254(d)(1); *see also Stevens*, 935 F.2d at 1390–91.

that concerning *whether there was some good reason for the*
*failure to resort to less suggestive procedures.'" Id.* (quoting
1 W. LaFave & J. Israel, *Criminal Procedure* § 7.4(b), at 581
(1984)) (emphasis in original). The Appellate Division declined
to address whether the identification procedure was suggestive.
*Milbourne*, 2007 WL 4355495, at *8-9. The Court therefore reviews
this factor de novo, *Porter v. McCollum*, 558 U.S. 30, 39 (2009);
*Rompilla v. Beard*, 545 U.S. 374, 390 (2005), and finds that the
identification procedure was suggestive.

The record indicates that police officers interviewed K.M.
and C.P. at the hospital, at which time C.P. indicated he
recognized one of the attackers as a former classmate, Michael
Hinson. C.P. Statement, Ra55 at 11. Sergeant Crispin later
conducted a line-up with Hinson, and C.P. positively identified
him. 2T81:25 to 82:1. Hinson named Petitioner and the other co-
defendants as being involved, and police arrested the other
three individuals. 2T85:2-5. Approximately twenty-four hours
later, Sergeant Crispin interviewed C.P. and showed him
photographs of the four arrestees, including Petitioner.
2T81:11-19; *see also* C.P. Statement. The police informed C.P.
that these were the people responsible for the attacks, and
asked him to state the actions each person took. *See* 2T85:17-20
("[C.P.] was shown the four photographs so that when he gave his
statement as to what happened to him, if possible, he would be

able to tell them which person did what."). No other photographs were shown to C.P.

The State informed the trial court that "Sergeant Crispin knew that each of those people had admitted being at the location. So there was really no question as to whether [the victims were] going to pick out the wrong person. [They were] simply asked, can you tell us what any of these people did as part of [their] statement to the – to Sergeant Crispin." 2T85:10-15. The purpose of photographic identification is to see if the *victims* are able to identify the alleged attackers, however.

The identification process became unnecessarily suggestive when C.P. was told the photographs were of people who police had arrested for attacking him and K.M. *See Simmons v. United States*, 390 U.S. 377, 383 (1968) ("The chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime."). Furthermore, nothing in the record suggests there were circumstances warranting the suggestive identification procedure. All of the alleged perpetrators were in custody prior to the interview; there was no urgency to identify the actors in order to get them off the streets. *See id.* at 384. C.P. was not in any precarious situation in which he might not be able to identify Petitioner

in a more traditional setting. *See Stovall v. Denno*, 388 U.S. 293, 302 (1967) (finding show up bringing defendant to victim's hospital bed was permissible because "an immediate hospital confrontation was imperative" as "[n]o one knew how long [victim] might live"). Based on the record before the Court, the photographic show-up was unnecessarily suggestive.

"If the procedure is found to have been unnecessarily suggestive, the next question is whether the procedure was so 'conducive to . . . mistaken identification' or gave rise to such a 'substantial likelihood of . . . misidentification' that admitting the identification would be a denial of due process." *United States v. Stevens*, 935 F.2d 1380, 1389 (3d Cir. 1991) (omissions in original). In other words, "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Neil v. Biggers*, 409 U.S. 188, 199 (1972); *see also Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). The Court reviews the Appellate Division's decision on this prong with the appropriate AEDPA deference.

"[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated

by the witness at confrontation, and the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199–200. Based on the record before the Court, and according the Appellate Division's decision the appropriate deference, the Court finds the Appellate Division reasonably applied federal law in concluding the in-court identification was reliable even if the identification was suggestive.

C.P. testified he was able to see Petitioner drag K.M. out of the car as the interior lights were on in K.M.'s car. 7T5:15-17, 8:11-18. He further testified Petitioner hit him above his eyebrow while C.P. was still in the car, putting him in close proximity to Petitioner. 7T9:13-22. He stated he was forced to watch Petitioner and his co-defendants sexually assault K.M. for a "fairly lengthy" period of time. 7T19:10-21. C.P. estimated he was less than 10 feet away from K.M. while Petitioner assaulted her. 7T22:8-17. C.P.'s statement to police describing Petitioner's actions to police occurred within twenty-four hours of the crime. *See* C.P. Statement. The Appellate Division therefore reasonably determined that C.P. was actively paying close attention to the events unfolding around him, had sufficient opportunity to identify Petitioner from his participation, and described those actions to police shortly after the commission of the crimes.

The Court notes the state court used trial as the time of "confrontation" for two factors, noting C.P. "positively identified defendant without hesitation at trial" and "accurately described defendant based upon his recollection at the scene," but used the photographic show-up as the "confrontation" for the length of time between the crime and the confrontation. *State v. Milbourne*, No. A-3068-04, 2007 WL 4355495, at *8 (N.J. Super. Ct. App. Div. Dec. 14, 2007). However, the state court gave great weight to C.P.'s ample opportunity to watch and interact with Petitioner at close proximity during the crime and the fact that "C.P. was not a casual observer." *See id.* This Court therefore cannot say that it was an unreasonable determination that the totality of the circumstances indicated C.P.'s in-court identification was reliable. It is therefore a reasonable conclusion that the suggestiveness in the identification procedure did not create "a very substantial likelihood of . . . misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). *See also Perry v. New Hampshire*, 565 U.S. 228, 232 (2012) ("[I]f the indicia of reliability are strong enough to outweigh the corrupting effect of the . . . suggestive circumstances, the identification evidence ordinarily will be admitted, and the jury will ultimately determine its worth." (citing *Simmons*)). The factual determinations by the Appellate Division were reasonable, and

the Court cannot say that its decision to find the totality of the circumstances weighed in favor of reliability was contrary to or an unreasonable application of federal law. The Court will deny habeas relief on this ground.

**E. Ineffective Assistance of Counsel**

The remainder of Petitioner's claims are allegations of ineffective assistance of trial and appellate counsels. Petitioner must "show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). He must then show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Furthermore, "[w]hen a federal habeas petition under § 2254 is based upon an ineffective assistance of counsel claim, '[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable,' which 'is different from asking whether defense counsel's performance fell below *Strickland*'s standard.'" *Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). "Federal habeas review of ineffective assistance of counsel claims is thus 'doubly deferential.'" *Id.* (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)).

1. *Whether Trial Counsel was ineffective in preparing and arguing* Miranda *motion (Grounds VI and IX)*

Petitioner's first argument regarding the effectiveness of his trial counsel concerns the January 5, 2004 *Miranda* hearing. 2T. He alleges trial counsel erred by failing to argue that the *Miranda* warnings provided by Officer Patitucci in the car were deficient because Officer Patitucci failed to inform him that an attorney would be provided to him if he was unable to afford one. Pet. PCR Brief at 20. He also asserts the warnings he received prior to giving his taped statement were insufficient because he had already been interrogated, *id.* at 24-25, and that trial counsel neglected to sufficiently consult with him prior to the hearing and advise Petitioner of his right to testify during the hearing, *id.* at 27-28.

The PCR court determined Petitioner had not demonstrated either prong of the *Strickland* analysis. 14T30:4-5. The court stated that "[a]lthough his recitation of the *Miranda* rights at the *Miranda* hearing did not include the right to appointed counsel, Detective Patitucci testified at trial that he advised Petitioner of his right to appointed counsel during this initial reading." 14T30:17-22. "Moreover, upon arrival at city hall, and prior to any interrogation, Petitioner was again read his rights, and reviewed and signed a *Miranda* card." 14T30:23-25. "Although [Detective] Patitucci could not remember whether or

not he read the card to Petitioner, Detective [Zanni] testified that Patitucci read Petitioner his rights prior to Petitioner signing the *Miranda* card." 14T31:21-25; *see also* 2T57:13-22. The PCR court did not credit Petitioner's allegations that his statement was coerced, and concluded that there was no prejudice to trial counsel's failure to consult with Petitioner as there was not a reasonable likelihood the result of the hearing would have been different.

The PCR court reasonably applied federal law in determining counsel did not err by not arguing that Detective Patitucci did not comply with *Miranda*. Even if Detective Patitucci did leave out the right to appointed counsel when warning Petitioner in the car, the omission was corrected by the *Miranda* card Petitioner signed prior to being interrogated. *Siebert* does not apply in this situation because Petitioner was not repeating a statement he had given prior to receiving the complete *Miranda* warnings. *Missouri v. Siebert*, 542 U.S. 600 (2004) (plurality) (holding that "midstream recitation of warnings after interrogation and unwarned confession" does not comply with *Miranda*). "In *Siebert*, the suspect's first, unwarned interrogation left 'little, if anything, of incriminating potential left unsaid,' making it 'unnatural' not to 'repeat at the second stage what had been said before.'" *Bobby v. Dixon*, 565 U.S. 23, 31 (2011) (quoting *Siebert*, 542 U.S. at 616-17

(plurality opinion)). Here, Detectives Patitucci and Zanni did not interrogate Petitioner in the car; Petitioner gave his first incriminating statement after receiving the written *Miranda* card and receiving the complete warnings. The "question-first" tactic employed by the police and rejected by the Supreme Court in *Seibert* did not occur in this instance. Therefore, the PCR court correctly and reasonably applied federal law when it determined trial counsel did not err by not raising this argument, and its decision is based on a reasonable determination of the facts based on the record before it. Petitioner is not entitled to habeas relief on this ground.

Petitioner further argues trial counsel was ineffective while preparing for and participating in the *Miranda* hearing because he failed to sufficiently consult with Petitioner and advise Petitioner of his right to testify during the hearing. Essentially, Petitioner asserts his taped statement was the product of police coercion and therefore involuntary, and trial counsel's failure to call Petitioner as a witness resulted in the admission of the statement.

"The ultimate question in the voluntariness calculus is 'whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution.'" *Fahy v. Horn*, 516 F.3d 169, 194 (3d Cir. 2008) (quoting *Miller v. Fenton*, 474 U.S. 104,

112 (1985)). "[T]he ultimate issue of 'voluntariness' is a legal question requiring independent federal determination." *Miller*, 474 U.S. at 109-10. However, "subsidiary questions, such as the length and circumstances of the interrogation, the defendant's prior experience with the legal process, and familiarity with the Miranda warnings . . . are conclusive on the habeas court if fairly supported in the record and if the other circumstances enumerated in § 2254(d) are inapplicable." *Id*. at 117.

As previously discussed, Petitioner was sufficiently advised of his *Miranda* rights prior to giving his untaped statement.[10] The trial court concluded Petitioner's taped statement began forty-five minutes after beginning to speak with police, with a total time of "approximately three or three and a half [hours] or less for the entire transaction, from the time of arrest until the end of tape." 2T79:19-21. The trial court had the benefit of listening to the taped statement and found that "there was no indication Mr. Milbourne was so tired as to have been oppressed by the interrogation or the questioning." 2T80:2-4. It further determined the officers' tones "were not, in any fashion, threatening. They were more conversational in nature." 2T80:5-7. "I'm satisfied, having heard the testimony

---

[10] Petitioner admitted during cross-examination at trial that he "understood [his rights] at the time" of his statement. 8T53:17.

and heard the testimony of the police, that their testimony was credible and believable." 2T80:12-14. The PCR court also noted that "Petitioner was in his early 20's at the time of the questioning, had graduated from high school, and served in the military, and had average intelligence. This was not a lengthy detention and interrogation." 14T34:9-12. These factual determinations are reasonably supported by the record.

After reviewing Petitioner's allegations of psychological intimidation, allegations of threats of physical force, and claims that he attempted to invoke the right to counsel, the PCR court determined "Petitioner simply is not a credible witness; his claims are clearly baseless, and would not have affected the outcome of his hearing." 14T33:18-20. "His claim that his codefendants implicated him as a result of excessive police coercion, and that he only provided a confession under the premise that there would be no penal consequences was heard and rejected by the jury." 14T33:21-25. The PCR Court's credibility determination, its determination that the police did not use improper intimidation, and its determination that Petitioner did not attempt to invoke his *Miranda* rights are entitled to deference as they are supported by the testimony at the *Miranda* hearing and the transcript of Petitioner's taped statement, and Petitioner has not rebutted the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). *See also*

*Fahy*, 516 F.3d at 196; *Miller*, 474 U.S. at 112 (noting "whether in fact the police engaged in the intimidation tactics alleged by the defendant" is entitled to § 2254 deference (citing *LaVallee v. Delle Rose*, 410 U.S. 690, 693-95 (1973) (per curiam))).

Considering the facts as determined by the state courts, the Court is satisfied the totality of the circumstances indicate that Petitioner knowingly and voluntarily waived his *Miranda* rights. After reviewing the *Miranda* hearing transcript, the transcript of Petitioner's taped statement, and the arguments presented to the PCR court, the Court concludes Petitioner's will was not overborne by police misconduct. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *Culombe v. Connecticut*, 367 U.S. 568, 581-84 (1961). In his taped statement, Petitioner "[swore] on a bible" that he had been treated fairly, gave the statement freely, and had not been promised anything in exchange for the statement. Milbourne Statement, Ra53 at 16-17. Ultimately, there is no doubt that under the circumstances his statements were voluntary as they were "obtained in a manner comfortable with the requirements of the Constitution." *Fahy*, 516 F.3d at 194.

Moreover, it was also a reasonable determination that Petitioner did not clearly and unambiguously invoke his right to remain silent or to have an attorney present during

interrogation. 14T35:16-24. Petitioner's allegation that he asked for an attorney is qualified by his trial testimony, in which he testified he asked the detectives if the judge would "send [him] an attorney now[.]" 8T46:13-14. Under established federal law at the time of the *Miranda* hearing and trial, invocation of the *Miranda* right to an attorney must be unambiguous. *Davis v. United States*, 512 U.S. 452, 459 (1994). According to his trial testimony, Petitioner only asked if an attorney would be available to him at approximately 2:00 in the morning; he did not clearly and unambiguously state he did not want to speak with detectives until one arrived. "In *Miranda* itself, [the Supreme Court] expressly rejected the suggestion 'that each police station must have a "station house lawyer" present at all times to advise prisoners . . . .'" *Id.* at 460 (quoting *Miranda v. Arizona*, 384 U.S. 436, 474 (1966)). At best, this is an ambiguous request for counsel, which under federal law is insufficient to invoke *Miranda*. *See also Berghuis v. Thompkins*, 560 U.S. 370, 381-82 (2010) (holding invocation of *Miranda* right to remain silent must be unambiguous). The PCR court's determination that Petitioner did not invoke his *Miranda* rights is reasonably supported by the record, and is not contrary to, nor an unreasonable application of, established federal law.

As the Court independently determines Petitioner gave a voluntary statement, the state courts' conclusions that trial counsel did not render ineffective assistance are not an unreasonable application of, or contrary to, federal law. Because Petitioner's statement to the detectives was admissible, there is not a reasonable probability that the *Miranda* hearing would have turned out differently even if Petitioner had testified. Moreover, when he did testify at trial, he conceded he understood his rights at the time[11], and he acknowledged in his taped statement that he had been treated fairly. *See* Ra53 at 16-17, *supra*. The state courts therefore applied *Strickland* reasonably when they determined Petitioner had not shown he was prejudiced. Petitioner is not entitled to habeas relief on this basis. *See United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002)("[F]ailure to satisfy either prong defeats an ineffective assistance claim[.]").

> 2.  *Whether trial counsel was ineffective for failing to object to and/or eliciting prejudicial inadmissible hearsay (Ground VII)*

Petitioner further argues trial counsel was ineffective for failing to object to mentions that Hinson implicated Petitioner in the crime as well as eliciting them directly. The PCR court concluded trial counsel's actions were "a central aspect of

---

[11] *See* n.10, *supra*.

Petitioner's defense. Petitioner claimed that police used physical coercion on the other defendants to obtain statements implicating Petitioner in the crime, and that police told petitioner of these allegations to coerce a false confession from him." 14T36:22 to 37:2.

"[T]he admission of a confession of a codefendant who did not take the stand deprive[s] the defendant of his rights under the Sixth Amendment Confrontation Clause, when that confession implicate[s] the defendant." *Schneble v. Florida*, 405 U.S. 427, 429–30 (1972) (citing *Bruton v. United States*, 391 U.S. 123 (1968)). The Court denies habeas relief on this point because even if counsel did err, Petitioner was not prejudiced.[12]

The references to Hinson's statements were made in passing and were fairly vague as to Petitioner's involvement. For example, trial counsel stated in opening arguments that "[the police] lean[ed] on Mr. Hinson. And after a while Mr. Hinson gives up some other names. One of those was Lamar Milbourne. . . . The police officers rush out. Grab up those people. Bring them to the police station. . . . [T]wo veteran detectives sit [Petitioner] down and tell him that Mike Hinson is inculpating

---

[12] The Court reviews the prejudice prong de novo as the PCR court only decided trial counsel did not err, and the Appellate Division adopted the PCR court's reasoning. *State v. Milbourne*, No. A-3313-10, 2012 WL 6195813, at *3 (N.J. Super. Ct. App. Div. Dec. 13, 2012)

him in a horrible crime in Bridgeton." 3T38:25 to 39:15.

Detective Zanni testified that Petitioner began cooperating once Detective Zanni mentioned "we had currently another subject that we were talking to and implicated Mr. Milbourne in the incident." 6T50:1-3. During cross-examination, Detective Zanni stated Petitioner "was advised that I spoke to Mr. [Hinson]" and that the purpose in telling him that was "[t]o let [Petitioner] know that we knew what happened in the park." 6T61:6, 10-11. Petitioner later testified police told him that he "was under arrest for rape. And they said that Mike was upstairs. Michael Hinson was upstairs telling them that [Petitioner] was there with them." 8T34:24 to 35:1. The state also responded to trial counsel's allegations that police "were going out of their way to arrest somebody or anybody of these crimes" by stating police caught a "lucky break" when C.P. recognized Hinson, who in turn named Petitioner as being present. 9T4:8-9, 24-25.

These statements at most placed Petitioner at the scene, something he himself admitted in his statement to police. The evidence of Petitioner's actual involvement and participation in the assault, kidnapping, sexual assault, and other charges came from people who testified at trial. The two victims, K.M. and C.P., testified as to Petitioner's involvement in the crime. Petitioner also admitted to assaulting C.P. in his statement. The brief mentions of Hinson's statements did not go into

specific details as to what Hinson claimed Petitioner did and

"added little to [the] compelling evidence against" Petitioner.

*Compare Bond v. Beard*, 539 F.3d 256, 276 (3d Cir. 2008), *as
amended* (Oct. 17, 2008) (finding *Bruton* error harmless on habeas

review where eyewitness identified defendant and defendant

admitted the shooting but argued confession was coerced), *and
Sanders v. Klem,* 341 F. App'x 839, 843 (3d Cir. 2009)

(*Bruton* error harmless on habeas review), *with Holland v.
Attorney Gen. of N.J.,* 777 F.2d 150, 157–59 (3d Cir. 1985)

(*Bruton* error not harmless on habeas review where defendant did

not admit crime and no eyewitness placed defendant at scene at

the time of crime).

Because any error in mentioning the statements was

harmless, Petitioner cannot show he was prejudiced by trial

counsel's actions. His ineffective assistance of counsel claim

fails on this basis.

> 3. *Whether trial counsel was ineffective for stipulating
> to withhold from jury that unknown person's DNA was
> present on K.M. (Grounds I, VII, and X)*

Petitioner claims trial counsel was ineffective for

agreeing to enter into a stipulation regarding the DNA evidence

instead of focusing on a third-party guilt defense.[13] The PCR

---

[13] Petitioner also argues that the trial court erred by excluding
the DNA results from evidence. As noted by the Appellate
Division on the PCR appeal, the trial court did not exclude the

court and Appellate Division, which adopted its position from Petitioner's direct appeal, found that Petitioner had not established prejudice. *See State v. Milbourne*, No. A-3313-10, 2012 WL 6195813, at *3-4 (N.J. Super. Ct. App. Div. Dec. 13, 2012) (citing *State v. Milbourne*, No. A-3068-04T4, 2007 WL 4355495, at *5-7 & n.2 (N.J. Super. Ct. App. Div. Dec. 14, 2007)); *see generally* 14T.

The stipulation specifically informed the jury that Petitioner's DNA was not found in the specimens from K.M:

> "Specimens from the sexual assault evidence collection kit . . . of [K.M.] and specimens from Lamar Milbourne were sent to the New Jersey State Police Lab for analysis. No DNA of Lamar Milbourne was detected in the specimens from the sexual assault evidence collection kit of [K.M.]."

3T93:1-7. The logical inference from that is any DNA found on K.M. belonged to someone other than Petitioner. Trial counsel highlighted this fact in closing, stating that "there's no DNA. This incident apparently – on [sic] if you believe the stories from between 20 minutes and an hour. The guys are having oral sex and vaginal sex. And there's rape. And all these things are going on. There's a rape kit taken. *And the DNA doesn't match my*

---

evidence. *State v. Milbourne*, No. A-3313-10, 2012 WL 6195813, at *4 (N.J. Super. Ct. App. Div. Dec. 13, 2012). The evidence was not presented at trial because trial counsel agreed with the State not to introduce it. The Court considers everything under the ineffective assistance of counsel claim as there is no trial court ruling to review.

*client*. There's no physical evidence." 8T79:1-7 (emphasis

added). Additionally, "contrary to Petitioner's current claims,

he did present a third-party defense, alleging that the attack

was committed by his codefendants. . . . Petitioner was not

convicted on DNA evidence. He was convicted on the testimony of

the victims, as well as his own confession to police." 14T39:20

to 40:2. The jury was aware that Petitioner's DNA and

fingerprints were not found on K.M. or the crime scene, and that

it was Petitioner's position that his co-defendants committed

the rape and robbery and falsely accused him due to police

misconduct. Therefore, the state courts reasonably applied

*Strickland* in determining Petitioner had not established the

prejudice prong.

Petitioner is not entitled to habeas relief on this ground.

4. *Whether appellate counsel was ineffective for failing
   to raise the above claims (Ground V)*

Petitioner's final claim of ineffective assistance of

counsel is that his appellate counsel was ineffective for

failing to raise trial counsel's "errors which occurred before

the trial court." Pet. PCR Brief at 46. In determining whether

appellate counsel was ineffective, the Court applies the

*Strickland* standard. *See Smith v. Robbins*, 528 U.S. 259, 285-86

(2000); *Smith v. Murray*, 477 U.S. 527, 535-536 (1986). To

establish the prejudice prong, Petitioner must show "that there

is a 'reasonable probability' — 'a probability sufficient to undermine confidence in the outcome,' but less than a preponderance of the evidence — that his appeal would have prevailed had counsel's performance satisfied constitutional requirements." *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002) (quoting *Strickland*, 466 U.S. at 694–95).

Other than the mere fact that the ineffective assistance of counsel claims were not raised on appeal, Petitioner has set forth no facts or supporting case law to support his contention that appellate counsel was ineffective. Appellate attorneys are not constitutionally required to raise every theoretical issue on appeal, *see United States v. Turner*, 677 F.3d 570, 577-78 (3d Cir. 2012), and the New Jersey courts have frequently stated that "[i]neffective-assistance-of-counsel claims are particularly suited for post-conviction review because they often cannot reasonably be raised in a prior proceeding." *State v. Preciose*, 609 A.2d 1280, 1285 (N.J. 1992). Moreover, Petitioner cannot show he was prejudiced by appellate counsel's failure to raise the claims on direct appeal as this Court has already concluded that the state courts reasonably applied *Strickland* to trial counsel's performance. There is therefore not a reasonable probability that the appeal would have turned out differently had appellate counsel raised the arguments on

direct appeal. The state courts therefore reasonably applied *Strickland* to appellate counsel's performance.

## F. Actual Innocence

After the completion of briefing, Petitioner submitted a new claim of actual innocence, arguing that no reasonable juror would have convicted him if the DNA evidence would have been admitted into evidence. July 11, 2016 Letter (citing *Schlup v. Delo*, 513 U.S. 298 (1995)).

Petitioner is not entitled to relief under *Schlup*. *Schlup* does not provide for an independent basis of habeas relief. Instead, it provides a "gateway" method by which procedurally defaulted claims may be heard in federal court on their merits: "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536–37 (2006) (quoting *Schlup*, 513 U.S. at 327). *Schlup* does not apply to Petitioner's claims because he is not asking the Court to excuse a procedural default in order to have it consider his ineffective assistance claim on its merits. Petitioner's ineffective assistance of counsel claim was properly exhausted in the state courts; therefore, *Schlup* does not apply.

Even if *Schlup* did apply, Petitioner would not qualify for relief under its standard. The fact that the DNA found on K.M. did not match Petitioner's DNA is not new evidence; it was available at trial and was presented to the jury in the form of the stipulation. Petitioner has presented this Court with no *new* evidence that was not presented at trial. The jury was aware that Petitioner's DNA was not found on K.M. and convicted him anyway in light of the strong evidence of his guilt including his own confession and eyewitness testimony. Petitioner has not met *Schlup*'s stringent standard for relief.

To the extent Petitioner is attempting to bring a "freestanding" actual innocence claim, such a claim would be unexhausted as it was not presented to the state courts. *But see* 28 U.S.C. § 2254(b)(2)(" An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Moreover, it is not clear that there is an established federal right to bring such a claim. *See Herrera v. Collins*, 506 U.S. 390, 417 (1993) (assuming without deciding "that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim"); *see also Dist. Attorney's Office for Third Judicial*

*Dist. v. Osborne*, 557 U.S. 52, 71 (2009) ("Whether such a federal right exists is an open question."). Even if such right existed, Petitioner would not be entitled to relief because the standard for relief under *Herrera* is stricter than that for "gateway" relief under *Schlup*. *See House*, 547 U.S. at 555; *Albrecht v. Horn*, 485 F.3d 103, 122 (3d Cir. 2007). As Petitioner has not met *Schlup*'s standard for relief, he has not met *Herrera*'s "extraordinarily high" standard.

## G. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

For the reasons expressed above, Petitioner has failed to make a substantial showing that he was denied a constitutional right. As jurists of reason could not disagree with this Court's resolution of the claims, the Court shall deny Petitioner a certificate of appealability.

## V.    CONCLUSION

For the reasons stated above, the habeas petition is denied. A certificate of appealability shall not issue.

An accompanying Order will be entered.


  July 27, 2017                          s/ Jerome B. Simandle
Date                                JEROME B. SIMANDLE
                                    U.S. District Judge